UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>SCOTT GREEN, )<br>)<br>          Defendant )<br>) | Crim. No. 05-10166-DPW |

**SENTENCING MEMORANDUM**
**ON BEHALF OF SCOTT GREEN**

The defendant, Scott Green, through counsel, submits this memorandum in anticipation of his sentencing by this Honorable Court, currently scheduled for December 14, 2005. In light of Mr. Green's lack of a criminal record, his extraordinary rehabilitation, his desire to make full restitution, and the agreed-upon advisory Guidelines offense level, Mr. Green should be sentenced to a term of probation with the condition that he continue to work and make payments toward the agreed-upon amount of restitution to the Medicare Trust Fund and Dr. Mitchell Pulver.

I.      OFFENSE CONDUCT.

The relevant offense conduct is not in dispute. Mr. Green has entered into a tentative Sentencing Agreement with the Government and has agreed that the Government's lengthy, detailed Statement of Facts, attached thereto, accurately reflects his conduct. In a nutshell, in 1999 and early 2000, Mr. Green, a licensed Mental Health Counselor, provided mental health services to patients under the supervision of Dr. Mitchell Pulver, a licensed psychiatrist, and Dr. Louis Frank, a licensed psychologist.

During this period, Mr. Green, who was not eligible to obtain Provider Identification Number ("PIN") to bill the Medicare program, caused improper billings to be made using Dr. Pulver's and Dr. Frank's names and PINs.

In total, improper claims totaling $93,562.87 were made. All of the billings were improper in that they did not comply with Medicare's billing regulations; however, until on or about June 3, 1999, the defendant was not aware of the relevant requirements. In addition, some of the claims were improper in that they sought reimbursement for services that had not been provided, or inflated the number of hours spent with the patient.

However, less than $45,000 of losses can be attributed to Mr. Green's criminal conduct. Before the Medicare program or the Government discovered the improper billings made under Dr. Pulver's name and PIN, and before Mr. Green knew or reasonably should have known that the offense was about to be detected, Dr. Pulver repaid $18,443.87 to the Medicare program. Mr. Green reimbursed Dr. Pulver approximately $11,000 of this repayment, and as part of his tentative Sentencing Agreement, he has undertaken to repay Dr. Pulver the remaining $7,928.07. The Government and Mr. Green agree that Mr. Green is entitled to a credit for amount repaid by Dr. Pulver, thus reducing the loss to $75,119. See U.S.S.G. § 2B1.1, Application Note 3(E)(i).[1]

With respect to much of the remaining loss amount, Mr. Green actually performed the services claimed; his only error was in failing to adhere to technical provisions of the Medicare billing regulations – and he was not at first aware that such billing was

---

[1] The Probation Officer "does not agree that Green should be given the benefit of the reduction in the loss as stated in this Application Note." Addendum to the Presentence Report at 6. The reason for her disagreement in not given.

2

improper. The Government and Mr. Green agree that because there is insufficient evidence to suggest that his conduct was knowing and intentional, in violation of the criminal law (rather than merely civil or administrative law), these amounts should not be used in calculating fraud loss. See United States v. Schaeffer, 291 F.3d 932, 939-40 (7th Cir. 2002); United States v. Peterson, 101 F.3d 375, 385 (5th Cir. 1996), cert. denied, 500 U.S. 1161 (1997).[2] Thus, the loss definitively caused by Mr. Green's illegal conduct amounts to only $44,694.16.

II.     ADVISORY GUIDELINE RANGE.

Mr. Green has pled guilty to a single count of mail fraud in violation of 18 U.S.C. § 1341. The parties agree that the applicable sentencing guideline is the fraud guideline, U.S.S.G. § 2B1.1; that the base offense level is 6, id. § 2B1.1(a)(2); that the loss is more than $30,000 and less that $70,000, resulting in a 6-point increase, id. § 2B1.1(b)(1)(D); that no other enhancements are applicable; and that Mr. Green is entitled to a 2-point adjustment for acceptance of responsibility, id. § 3E1.1(a). Accordingly, Mr. Green's offense level under the Guidelines is 10.

Mr. Green has 0 criminal history points, placing him in Criminal History Category I. Accordingly, the applicable advisory Guidelines range is 6-12 months and in Zone B of the Sentencing Table.

---

[2] The Probation Officer takes the position that Mr. Green "should have been fully apprised of the policies and procedures of the Medicare Program in light of his responsibilities with Geri-Psychiatric Associates of Weymouth, MA." Addendum to the Presentence Report at 4. However, as the Government agrees, it is the Government's burden to prove (at least by a preponderance of the evidence, for the purposes of a Guidelines calculation) that Mr. Green's conduct was knowing and intentional (not that he "should have known"). Because the Government acknowledges that it lacks the evidence to sustain this burden, it has not attempted to include approximately $30,000 in billings prior to June 3, 1999, in its loss calculation.

3

III.     FACTORS SUPPORTING A PROBATIONARY SENTENCE.

In fashioning a sentence, 18 U.S.C. § 3553 directs the court to "impose a sentence sufficient, but not greater than necessary," to carry out the purposes set forth in subsection 3553(a)(2). These purposes are "the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to Criminal conduct; (C) to protect the public for further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." Id. § 3353(a)(2).

As modified by United States v. Booker, although the Guidelines are no longer mandatory, the statute "requires a sentencing court to consider Guidelines ranges, see 18 U.S.C. § 3553(a)(4), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a)." United States v. Booker, 125 S. Ct. 738, 757 (2005) (emphasis added). Among these addition statutory concerns are factors such as "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; . . . (3) the kinds of sentences available; . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense." Id. 3553(a).

Taking into consideration the applicable factors, as discussed below, an appropriate sentence for his crime would be a term of probation, with the agreed-upon condition that he make restitution in the amount of $75,119 to the Medicare Trust Fund

and $7,928.07 to Dr. Pulver. Indeed, a term of probation is the only way to ensure that Mr. Green can satisfy his restitution obligation.

    A.    <u>"History and Characteristics of the Defendant"</u>

Mr. Green committed the crime to which he has pled guilty well over five years ago, at time -- as the report of Dr. Jack L. Potts explains -- of severe marital, emotional, and financial stress. Through extraordinary personal effort, and with the support of his second wife, Pamela, his family, friends, and the counseling community in which Mr. Green has remained productively employed, he has turned his life around and put his criminal conduct far behind him.

Following his separation from his first wife and the complete cessation of his Medicare billing activities, Mr. Green moved to Southern California, where a friend offered him a place to stay. He entered a twelve-step program to address perhaps the primary cause for his past criminal conduct – an addiction to gambling. This program opened Mr. Green's eyes to his vulnerable state and motivated him to make permanent changes. He has not gambled, or participated in day trading, since.

In addition, through diligent efforts he found employment in a variety of responsible positions in areas in which his background as a mental health counselor had prepared him: helping others. As the many letters of support submitted to the Court on Mr. Green's behalf demonstrate, his progress through these jobs shows an increasing amount of empathy and responsibility on Mr. Green's part, with a corresponding increase in appreciation of his talents and personal attributes on the part of his co-workers and supervisors.

At present, Mr. Green is gainfully employed as the manager of the Sun Grove Resort Village in Peoria, AZ, where he is responsible for coordinating the lives and activities of about 105 elders in an independent living facility.[3] He is paid an annual salary of $57,500, and is considered an indispensable employee by his supervisor. See letter of John Paul Taylor. Indeed, Mr. Taylor states that he would like to keep Mr. Green in his present position for the foreseeable future, if it is agreeable with the Court's sentencing disposition.

Finally, Mr. Green remarried in 2003 to Pamela Green, who has been a great support to Mr. Green in turning his life around and in helping him accept responsibility for his conduct. Pamela will continue to provide a steadying influence as Mr. Green completes his rehabilitation.

B.   "Need To Provide Restitution"

To the extent his finances have allowed, Mr. Green has taken responsibility to make restitution for his actions . Even before the criminal investigation began, when Dr. Pulver realized that the billings Mr. Green had made in his name were improper, Mr. Green reimbursed approximately $11,000 toward the $18,443.87 that Dr. Pulver returned to the Medicare program. Furthermore, Mr. Green has undertaken, in his Sentencing Agreement with the Government, to repay Dr. Pulver the remaining $7,928.07 that Dr. Pulver repaid.

In addition, on November 12, 2005, Mr. Green made a pre-sentencing restitution payment of $1,500 to the National Heritage Insurance Company, the entity that issued the improper payments. Mr. Green he has agreed with the Government to pay back a total of

---

[3] Sun Grove's residents all privately pay for the program; there is no funding by any federal, state, or local government agency, and no billing to Medicare or Medicaid.

6

$75,111 to the Medicare Trust Fund, even though the Government concedes that much of this sum cannot be attributed to Mr. Green's criminal conduct.[4]

    C.    <u>"Needed . . . Medical Care"</u>

Despite Mr. Green's extraordinary rehabilitation, the efforts he has made to redirect his life, and the stress of this longstanding criminal investigation and subsequent indictment, have taken their psychological toll. As Dr. Potts's report states, "Mr. Green quite likely is suffering from a Depressive Disorder as well as an Anxiety Disorder (possibly a Panic Disorder without Agoraphobia)." He is currently seeing a psychiatrist and has been prescribed medications for his mental conditions. As Dr. Potts concludes, continued psychiatric or psychological treatment is necessary for his continued recovery and full rehabilitation.

IV.    SENTENCING RECOMMENDATION.

A term of probation is the sentence "sufficient, but not greater than necessary" to fulfill the retributive, deterrent, and rehabilitative purposes of criminal punishment in Mr. Green's case. Given his acceptance of responsibility and his extraordinary efforts and success in rehabilitation, Mr. Green has shown he is deserving of such lenience. He poses absolutely no risk to the public safety or to government finances, as his full compliance with the law in the almost six years since the conduct for which has been charged occurred clearly demonstrates.

If sentenced to a term of probation, Mr. Green's continued employment at Sun Grove Resort Village is assured, and he will be able to continue to fulfill the

---

[4] It bears noting that the amount Mr. Green has agreed to repay includes the percentage of the Medicare receipts retained as billing fees by his billing agent and the percentage that Mr. Green paid to Dr. Frank as a supervisory fee. The billing agent and Dr. Frank have not been charged for their conduct in connection with this matter.

Government's goal of restitution. Moreover, a probationary term will allow him to continue to seek the psychological treatment necessary for his full and complete rehabilitation.

Though not a Guidelines sentence, a probationary sentence is reasonable in light of the advisory Guidelines range, the nature of the offense, Mr. Green's cooperation with the Government's investigation, and his continuing rehabilitation. In the alternative, if the Court would insist on a Guidelines sentence, Mr. Green would ask, as a condition of probation, that he be given six months' home detention, in a manner that allows him to remain gainfully employed and continue to meet his obligation to make restitution.[5]

Respectfully submitted,

SCOTT GREEN

By his attorney,

Mark D. Smith, BBO # 542676
Laredo & Smith, LLP
15 Broad Street, Suite 600
Boston, MA 0210911
(617) 367-7984

Dated: December 12, 2005

---

[5] The Guidelines would permit a sentence of probation with conditions requiring a period of community confinement, home detention, or intermittent confinement for the minimum term, here, sixth months. U.S.S.G. § 5B1.1(a)(2) & Application Note 1(b).

December 9, 2005

To Whom It May Concern:

Scott Green has informed me about his current legal situation hence this letter of reference.

Since Scott started on December 27th, 2004, we are very pleased with Scott's performance as Sun Grove Resort Village's Executive Director over the past year. We feel that we finally have the right person at the helm of our independent-living residence. There had been much turmoil and inconsistency in this position prior to Scott's arrival. Scott brings to Sun Grove a solid business sense, passion for his work and a diplomatic and empathic nature. He is an unyielding advocate for our 105 elderly residents as well as his employees.

Scott clearly cares about what he does. Since arriving, Scott has been able to positively increase the quality of life for his residents. His contributions include making numerous capital improvements and reparations to the property that, without his management skills, we would not and have not been able to accomplish. He has vastly expanded the life enrichment/activity program, added additional transportation to accommodate the residents' medical appointments, created an employee recognition program, and generally improved service delivery to our residents. He has a plan that will continue to provide great benefit for our residents during the coming year.

In addition, our organization values Scott's ability to conference and collaborate with the residents and their families, especially when illness befalls them. His experience in the counseling field and working with elder issues allows him to give solid guidance and emotional support.

Scott has high standards of excellence. I have known Scott to be a person of integrity and good character. He has proven to be ethical, reliable, responsible and vital to the successful functioning of our Sun Grove retirement community. He is well respected by our organization, and we aim to keep him in our employ for the foreseeable future.

Sincerely,

John Paul Taylor
Regional Director